

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE INTEREST OF S.T.S, | § | No. 08-23-00138-CV |
| a Child. | § | Appeal from the |
| | § | 388th Judicial District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 2016DCM5159) |

## <u>MEMORANDUM OPINION</u>

Appellant appeals from the trial court's Order in Suit for Modification of Support Order (the modification order) that increased his child support obligation from $330 per month to $558.13 per month and added a $260 per month medical support obligation. We affirm.

### RELEVANT FACTUAL BACKGROUND

Appellant, Dennis, and his former wife, Sandy, are the parents of one child, S.T.S.[1] In 2016, Sandy filed a petition for divorce. In 2018, Dennis and Sandy signed a mediated settlement agreement (MSA) that required Dennis "to pay an adjusted child support obligation in the amount of $330, commencing April 1, 2018, . . . until the child emancipates, by agreement of the parties otherwise, or by further order of the court." The couple "agreed that the standard child support

---

[1] To protect the identity of the child, the opinion will refer to appellant as Dennis, to the child's mother as Sandy, and to the child as S.T.S. or simply as "the child." *See* TEX. FAM. CODE ANN. § 109.002(d).

obligation is an amount greater than what has been agreed upon, and the health insurance reimbursement by [Dennis] to [Sandy] is also an amount greater than what has been agreed upon. There have been other considerations by the parties in arriving at said support obligation."

On August 27, 2018, the trial court signed the Final Decree of Divorce, approving the MSA "as contained in this Final Decree of Divorce." The decree stated, "this Final Decree of Divorce shall control in all instances" and listed "further order modifying the child support" as "one of the events" that could alter Dennis' support obligation. The decree contained an acknowledgement that both parties "fully and completely" read the decree and "fully" understood its contents. Dennis was ordered to pay Sandy child support in the amount of $330 per month, with the first payment being due and payable on April 1, 2018.

In 2021, the El Paso County Domestic Relations Office (the DRO) filed a Suit for Modification of Child Support Order alleging "[t]he circumstances of the child or a person affected by the order to be modified [had] materially and substantially changed since rendition of the order . . . .." The case was assigned to Associate Judge James Lucas. After an objection by Dennis, the case was referred to Senior District Court Judge Angelica Barill. On April 3, 2023, Judge Barill heard Dennis' various motions and the DRO's modification suit. On May 2, 2023, Judge Barill signed the modification order, finding that a material and substantial change in circumstances existed since rendition of the 2018 divorce decree, granting the DRO's request for modification, and increasing Dennis' child support obligation from $330 per month to $558.13 per month beginning on January 1, 2022. The court also ordered Dennis to pay $260 per month in medical support and denied all his pending motions. Dennis filed a pro se notice of appeal and a pro se appellant's brief.[2]

---

[2] Sandy did not file a brief. The DRO filed a brief as co-appellee.

## REVIEW OF A PRO SE BRIEF

In his brief, Dennis lists 20 "issues," his "Statement of Facts" section does not contain a single citation to the record, and his few citations to authority do not always match his arguments. The Texas Rules of Appellate Procedure require that a brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). A failure to provide citations or argument and analysis for the contentions can result in waiver. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018).

Pro se litigants are held to the same standards as licensed attorneys and must comply with all applicable rules of procedure. *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). A pro se litigant—such as appellant here—is required to properly present his case on appeal, just as he is required to properly present his case to the trial court. *Id.* "If this were not the rule, pro se litigants would benefit from an unfair advantage over those parties who are represented by counsel." *Id.* "Therefore, we will not make allowances or apply different standards, because a case is presented by a litigant acting without the advice of counsel." *Id.* Also, "an appellate court has no duty to search the record without guidance from an appellant to determine whether [his] assertion of reversible error is valid." *Mullendore v. Muehlstein*, 441 S.W.3d 426, 430 (Tex. App.—El Paso 2014, pet. denied); *see also King v. Wells Fargo Bank, N.A.*, 205 S.W.3d 731, 734–35 (Tex. App.—Dallas 2006, no pet.) (stating it is well-established that it is not the duty of appellate courts to make an independent search of voluminous appellate records for evidence to support appellant's contentions).

Dennis's pro se brief consists of numerous grievances; therefore, it is challenging to discern his legal issues on appeal. However, in the interest of justice, we will liberally construe Dennis' pro se brief and attempt to address his appellate complaints to the extent we can discern them. *See Serrano v. Union Planters Bank, N.A.*, 162 S.W.3d 576, 578 (Tex. App.—El Paso 2004, pet.

denied) ("Appellants, pro se, filed a poorly drafted and convoluted brief purporting to assert various points of error. The list of issues, numbering eighteen, and included at the beginning of the brief, are virtually incomprehensible and nonsensical and do not frame any issues for review by this court. In the body of the brief, at the beginning of Appellant's argument, Appellant includes a complaint that we will read as their sole issue on appeal."). To the degree we can discern specific arguments, we address them below. To the extent Dennis has attempted to raise issues in his brief other than those addressed in this opinion or to the extent this court misunderstands his arguments based on their incomprehensibility, we hold those issues have been waived as inadequately briefed, and we overrule them. *See 2008 Lexus GX470 v. State*, 660 S.W.3d 541, 543 (Tex. App.—San Antonio 2022, no pet.) (holding same).

## MODIFICATION OF SUPPORT OBLIGATIONS

Dennis asserts MSAs cannot be changed without proof of fraud. Relatedly, he contends the trial court erred by awarding Sandy retroactive child support.

The Texas Family Code allows modification of a child support order as follows:

(a) Except as provided by Subsection (a-1), (a-2), or (b), the court may modify an order that provides for the support of a child, including an order for health care coverage under Section 154.182 or an order for dental care coverage under Section 154.1825, if:

(1) the circumstances of the child or a person affected by the order have materially and substantially changed since the earlier of:

(A) the date of the order's rendition; or

(B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based; or

(2) it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines.

4

(a-1)  If the parties agree to an order under which the amount of child support differs from the amount that would be awarded in accordance with the child support guidelines, the court may modify the order only if the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition.

TEX. FAM. CODE ANN. § 156.401(a), (a-1).

In its modification order, the trial court found as follows:

[S]ince rendition of the support order entitled Final Decree of Divorce signed on 8-27-18 there has been a material and substantial change in the circumstances of the child or parties, or it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines, which warrants the following modification of the existing support order.

On appeal, Dennis does not raise a specific evidentiary challenge, supported by citations to the record or relevant authority, to the above finding. Instead, he contends "a written settlement agreement, once signed by the parties, becomes a binding contract that supersedes any prior agreements or understandings [and that] the parties are bound by the terms of the settlement agreement unless there are grounds, such as fraud or mutual mistake, to set it aside."[3] Dennis' argument is without merit.

Dennis agreed in the MSA that his support obligation could be modified. The MSA stated, in part, "[Dennis] to pay an adjusted child support obligation in the amount of $330, commencing April 1, 2018, and a like amount every month thereafter, until the child emancipates, by agreement

---

[3] Dennis also contends "the OAG can not [sic] represent a private individual." This contention lacks merit. "Chapter 231 of the Family Code designates the Office of the Attorney General as the agency responsible for implementing federal Title IV-D requirements regarding child support." *In re Office of Atty. Gen.*, 422 S.W.3d 623, 625 n.1 (Tex. 2013); *see also* TEX. FAM. CODE ANN. § 231.001(1). "That chapter also allows the Office to delegate its Title IV–D duties to other agencies." *Office of Atty. Gen.*, 422 at 625 n.1; *see also* TEX. FAM. CODE ANN. § 231.002(c). "Chapter 203 provides for the creation of domestic relations offices to collect, monitor, and enforce child support in their respective jurisdictions." *Office of Atty. Gen.*, 422 at 625 n.1; *see also* TEX. FAM. CODE ANN. §§ 203.001–.007. "Domestic relations office" means a "county office that serves families, county departments, and courts to ensure effective implementation of this title." TEX. FAM. CODE ANN. § 203.001(2). A domestic relations office, such as the El Paso County DRO here, may "collect and disburse child support payments that are ordered by a court to be paid through a domestic relations registry" and "file a suit under this title, including a suit to . . . modify a court order for child support . . .." *Id.* § 203.004(a)(1), (3)(B). In this case, the El Paso DRO filed the motion to modify on Sandy's behalf, pursuant to its statutory powers. *See* TEX. FAM. CODE ANN. § 203.004(a)(3)(B).

of the parties otherwise, *or by further order of the court*." [Emphasis added.] The divorce decree also provided similar notice. The decree listed "*further order modifying the child support*" as "one of the events" that could alter Dennis' support obligation. [Emphasis added.] Although the divorce decree stated the "parties stipulate[d] the [MSA] is enforceable as a contract," the decree also stated as follows:

THE COURT MAY MODIFY THIS ORDER THAT PROVIDES FOR THE SUPPORT OF A CHILD, IF:

(1)     THE CIRCUMSTANCES OF THE CHILD OR A PERSON AFFECTED BY THE ORDER HAVE MATERIALLY AND SUBSTANTIALLY CHANGED; OR

(2)     IT HAS BEEN THREE YEARS SINCE THE ORDER WAS RENDERED OR LAST MODIFIED AND THE MONTHLY AMOUNT OF THE CHILD SUPPORT AWARD UNDER THE ORDER DIFFERS BY EITHER 20 PERCENT OR $100 FROM THE AMOUNT THAT WOULD BE AWARDED IN ACCORDANCE WITH THE CHILD SUPPORT GUIDELINES.

Thus, the divorce decree incorporated the terms of the MSA and tracked Family Code § 156.401. Accordingly, the trial court was authorized to modify the child support order.

Dennis also contends "[c]harging arrears for the time spent in defending the rights of personal income should not be sanctioned or punished due to attorneys and/or failure of the courts to provide [a] quick and speedy trial . . .." We assume Dennis is referring to the retroactive support ordered while the suit was pending.

Trial courts can retroactively modify existing child support obligations. *See id.* § 156.401. "Retroactive support is authorized by statute but it is limited to the date citation was served upon the obligor or the date of obligor's appearance, whichever occurs earlier." *In re B.R.F.*, 457 S.W.3d 509, 510 (Tex. App.—El Paso 2014, no pet.). Here, the trial court ordered the increase in child support retroactively.

6

Dennis filed numerous pleadings in the case and requested at least one continuance. "The setting and hearing of or continuing of pending motions are matters committed to the trial court's discretion." *In re S.L.M.*, 97 S.W.3d 224, 230 (Tex. App.—Amarillo 2002, no pet.). On appeal, Dennis provides no basis, supported by citations to the record or relevant authority, to support any contention that the trial court abused its discretion based on the delay between the filing of the suit and the signing on the modification order.

Also, "[a] support order may be modified with regard to the amount of support ordered only as to obligations accruing after the earlier of (1) the date of service of citation or (2) an appearance in a suit to modify." *Int. of W.M.*, 587 S.W.3d 828, 830 (Tex. App.—El Paso 2019, no pet.); *see also* TEX. FAM. CODE ANN. § 156.401(b). The trial court has broad discretion to modify child support obligations pursuant to § 156.401.

On November 8, 2021, Dennis filed a "Appearance Notice." The first hearing on the DRO's suit commenced on November 30, 2022, before Associate Judge Lucas. The final hearing on the merits of the DRO's suit commenced April 3, 2023, before District Court Judge Barill. In its modification order, the trial court ordered Dennis to begin paying $558.13 effective January 1, 2022. Therefore, in accordance with § 156.401(b), the effective date on which Dennis was obligated to begin paying the increased child support was long after the date of his appearance.

On appeal, he does not challenge the sufficiency of the evidence in support of the court's findings warranting the modification of the existing support order or of the amount to be paid under the modification. Therefore, on this record we hold the trial court did not abuse its discretion by modifying Dennis' child support obligations, and we overrule this issue.

## DUE PROCESS COMPLAINTS

Dennis asserts "the modification of [the] child support order was performed without proper due process . . .." We can discern two due process arguments. First, he contends the trial court

7

erred by "legislating from the [bench]," and "combining [sic] pre-trial hearing and final hearing when it directly effected the many issues of this cause and the Constitutional issue [sic] raise[d] without proper notice." Second, he makes several contentions under a section entitled "Production/Due Process" under which he mentions a hearing before "the referring court rather than the associate judge," and he contends the trial court erred by not granting "production and/or confirmation" and by refusing to acknowledge or rule on his "objections in counter petition [sic] and then refused to let a non-professional litigant/attorney read from his pleadings of those objections."

Dennis provides no basis, supported by citations to the record or relevant authority, to support any of these contentions. Also, constitutional arguments, even due process arguments, must be raised in the trial court or they are waived. *See Ratsavong v. Menevilay*, 176 S.W.3d 661, 671 (Tex. App.—El Paso 2005, pet. denied) (concluding error not preserved because "no indication in the record . . . that Appellants voiced their [due process] complaint to the trial court"); Tex. R. App. P. 33.1(a). Dennis provides no citation to the record that he raised a timely, specific due process violation complaint to the trial court. For this reason, his complaints are not preserved for our review.

## FAMILY CODE SECTION 201.015

The Texas Family Code allows a party to "request a de novo hearing before the referring court by filing with the clerk of the referring court a written request not later than the third working day after the date the party receives notice of: (1) the substance of the associate judge's report as provided by § 201.011; or (2) the rendering of the temporary order, if the request concerns a temporary order rendered by an associate judge under § 201.007(a)(14)(C)." Tex. Fam. Code Ann. § 201.015(a).

8

On appeal, Dennis contends his objections to the associate judge were ignored in two hearings. He also contends as follows:

> if the Associate Judge had no jurisdiction from respondent's objections at [the] 3rd hearing then there was no jurisdiction for his production and the district court needed to confirm ON THE RECORD that respondent's production was not valid . . . and [the] district court should have heard production issues. The District Court also refused to issues [sic] on OAG production requested by respondent, which Associate Judge refused to hear and district court refused under confidentiality . . .."

Again, the argument is difficult to follow, and Dennis provides no citations to the record or relevant authority. As noted by the DRO in its appellee's brief, Dennis raised an objection during a November 30, 2022, hearing before Associate Judge Lucas, which the judge acknowledged:

> Court: Okay. Well, your objections to the associate judge would be valid. You would go to Judge Gonzalez for the final.
>
> . . . .
>
> Court: Your objection to the associate judge conducting the final would be a valid objection. You're entitled to go to Judge Gonzalez for the final. If that's your objection, your objection to the associate judge hearing your final, that would be a valid objection to make, so that might moot the rest of your motions.
>
> . . . .
>
> Court: I said that your objection to the associate judge hearing your final would be a valid objection, so that will probably render it unnecessary for me to hear the rest of your motions.
>
> Dennis: So what you're saying is kind of like save time?
>
> Court: No. You have a right under the Family Code to have the district judge hear the final hearing of your case.
>
> Dennis: Which isn't just yet.
>
> Court: Which is not yet. You do not have – I have the right to conduct preliminary proceedings –
>
> Dennis: Sure, okay.
>
> Court: temporary orders and that sort of thing.

9

Dennis: So is that what the Court wants to do? Do you want to keep going?

Court: Well, what we're going to do is we're going to schedule the final. We are probably going to send this case over to Judge Gonzalez for the final modification hearing, if you have written a final objection, if your objection is in writing. Can you identify that? Can we find it in that pleading? Can you ask Carmen?

Dennis: Well, I'm still stuck on a couple of things.

Court: Go ahead.

.      .      .

Court: Well, I will make this comment. I believe I can rule on these motions. They would not constitute the final hearing on the modification, so we'll go ahead and schedule them.

.      .      .

Court: I'm going to hear your motions, and then if you convince me you're correct, there will be no need to schedule the final. If you don't convince me of that, the final will proceed forward.

Dennis: We're doing it now.

Court: No. That's what we're going to have the hearing on your motions for.

Dennis: Oh, okay. So we're pretty much wrapping it up for today?

Court: Right. We're going to get dates.

Dennis: Okay.

Court: And I guess we're not going to set the date, and if you're going to object to the associate Judge, I'm not going to schedule the final. I'm going to have –Ms. Macias [the DRO's attorney], you're going to have to schedule, if there's an objection to the associate Judge hearing it.

On February 9, 2023, the Honorable Stephen B. Ables, Presiding Judge, Sixth Administrative Judicial Region, signed an Order of Assignment transferring the case to District Court Judge Barill.

Dennis provides no authoritative support for his contention that Judge Lucas did not have the authority to sign interim orders before the final hearing on the merits. We agree with the DRO

10

that the Family Code does not envision intervention from a referring court until "*after* the date the associate judge signs the proposed order or judgment." *See* TEX. FAM. CODE ANN. § 201.1042(b) ("The party requesting a de novo hearing before the referring court shall file notice with the clerk of the referring court not later than the third working day *after the date the associate judge signs the proposed order or judgment*.") (emphasis added).

On this record, we can find no error or an abuse of discretion on the part of the associate judge. Therefore, this issue is overruled.

## CONSTITUTIONALITY CHALLENGE

Under a section entitled "Best Interest of the Child," Dennis contends as follows:

> Changing the use of words and the definition under law are errors of the courts, Financial Income cannot be used in "Best Interest of Child" when making custody choices but then the courts want to use the same definition under financial income after the fact against one parent. The courts and precedence have removed "Needs of the Child" and changed it to the illegal and common use of "Best Interest of the Child" to include violations of their own definition and practices which cannot be used in custody issues.

> By the court using BEST INTEREST OF THE CHILD under Child Support as financial a [sic] income basis the courts would have to deny conservatorship to anyone on TANF/AFCD FOR CUSTODY, custody would have go [sic] to higher income parent **financial issues,** which has been found unconstitutional. Either financial is a BEST INTEREST ISSUE or financial is not BEST INTEREST ISSUE.

Dennis provides no basis, supported by citations to the record or relevant authority, to support any of these contentions. To the extent Dennis takes issue with the trial court considering S.T.S.'s best interest, his argument lacks merit because best interest is a factor in determining child support. *See* TEX. FAM. CODE ANN. § 156.402(a) ("The court may consider the child support guidelines for single and multiple families under Chapter 154 to determine whether there has been a material or substantial change of circumstances under this chapter that warrants a modification of an existing child support order if the modification is in the best interest of the child."); *Id.* §

11

154.122(a) ("The amount of a periodic child support payment established by the child support guidelines in effect in this state at the time of the hearing is presumed to be reasonable, and an order of support conforming to the guidelines is presumed to be in the best interest of the child."); *Id.* § 154.123(a) ("The court may order periodic child support payments in an amount other than that established by the guidelines if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines."); *Id.* § 154.124(d) ("If the court finds the agreement is not in the child's best interest, the court may request the parties to submit a revised agreement or the court may render an order for the support of the child."). Therefore, we conclude Dennis' argument is without merit, and we overrule this issue.

## CONCLUSION

For the reasons stated above, we affirm the trial court's May 2, 2023, Order in Suit for Modification of Support Order.

SANDEE BRYAN MARION, Chief Justice (Ret.)

November 30, 2023

Before Palafox, J., Soto, J., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (Sitting by Assignment)

12